FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 07, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CLEONETTE U.,[1] <br>             Plaintiff, <br><br>   vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY,[2] <br>           Defendant. | No. 1:19-cv-03102-MKD <br><br> ORDER DENYING PLAINTIFF'S <br> MOTION FOR SUMMARY <br> JUDGMENT AND GRANTING <br> DEFENDANT'S MOTION FOR <br> SUMMARY JUDGMENT <br><br> ECF Nos. 14, 15 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death, or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. §
423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to
determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §
404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's
work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in
"substantial gainful activity," the Commissioner must find that the claimant is not
disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis
proceeds to step two.  At this step, the Commissioner considers the severity of the
claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers
from "any impairment or combination of impairments which significantly limits
[his or her] physical or mental ability to do basic work activities," the analysis
proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment
does not satisfy this severity threshold, however, the Commissioner must find that
the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to
severe impairments recognized by the Commissioner to be so severe as to preclude
a person from engaging in substantial gainful activity.  20 C.F.R. §
404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §

404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On April 27, 2015, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of April 28, 2014.[3]  Tr. 114, 229-33.  The application was denied initially and on reconsideration.  Tr. 149-52; Tr. 155-61. Plaintiff appeared before an administrative law judge (ALJ) on October 24, 2017. Tr. 45-88.  On May 1, 2018, the ALJ denied Plaintiff's claim.  Tr. 15-36.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through March 31, 2019, has not engaged

_____

[3] Plaintiff previously received a fully favorable decision on March 27, 2007.  Tr. 89-101.  Plaintiff's benefits ended when she returned to work.  Tr. 55.

ORDER - 6

in substantial gainful activity since April 28, 2014.  Tr. 21.  At step two, the ALJ

found that Plaintiff has the following severe impairments:  rheumatoid arthritis,

Sjogren's syndrome, mild degenerative disc disease, obesity and arthralgia.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 24-25.  The ALJ then concluded that Plaintiff has the RFC to

perform light work with the following limitations:

> [Plaintiff] can frequently climb ramps and stairs; never climb ladders,
> ropes, or scaffolds; frequently balance; occasionally stoop, kneel,
> crouch, or crawl; must avoid concentrated exposure to extreme cold,
> heat, humidity, vibration, fumes, odors, gases, poor ventilation, and
> hazards.

Tr. 25.

At step four, the ALJ found Plaintiff is able to perform her past relevant

work as a liquor manager and retail store manager.  Tr. 29.  Therefore, the ALJ

concluded Plaintiff was not under a disability, as defined in the Social Security

Act, from the alleged onset date of April 28, 2014, though the date of the decision.

Tr. 30.

On March 12, 2019, the Appeals Council denied review of the ALJ's

decision, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for

purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly developed the record;

2. Whether the ALJ conducted a proper step-two analysis;[4]

3. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4. Whether the ALJ properly evaluated lay witness evidence.

ECF No. 14 at 2.

**DISCUSSION**

**A. Record Development**

Plaintiff argues the ALJ improperly failed to fully develop the record. ECF No. 14 at 3-6.

The Plaintiff has a duty to submit, or inform the ALJ about, any written evidence no later than five business days before the hearing. 20 § C.F.R. 404.935(a). If the Plaintiff misses the deadline, the ALJ must accept the untimely

---

[4] Plaintiff combined the arguments regarding the step-two analysis and the ALJ's development of the record. For clarity, the Court addresses the arguments separately.

ORDER - 8

evidence if the ALJ has not yet issued a decision and one of the following

exceptions applies:

> 1) A Social Security Administration (Administration) action misled the
> Plaintiff;

> 2) The Plaintiff's physical, mental, educational, or linguistic limitation(s)
> prevented Plaintiff from informing the Administration about or submitting
> the evidence earlier; or

> 3) Some other unusual, unexpected, or unavoidable circumstances beyond
> the Plaintiff's control prevented them from informing the Administration
> about or submitting the evidence earlier. Examples include, but are not
> limited to, serious illness, death or serious illness in immediate family, or
> Plaintiff actively and diligently sought evidence from a source and the
> evidence was not received or was received less than five business days prior
> to the hearing. 20 § C.F.R. 404.935(b).

Social Security Ruling (SSR) 17-4p further explains that representatives

have a duty to act with reasonable promptness to help obtain information and

evidence. Representatives are expected to submit or inform the Administration

about evidence as soon as they obtain or become aware of the evidence. SSR 17-

4p. Representatives are expected to submit the evidence unless they show that,

despite good faith efforts, the representative could not obtain the evidence. *Id.*

ORDER - 9

The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996). The ALJ will assist in developing the record and may request existing evidence from a medical source/entity if the Plaintiff informed the ALJ of the evidence no later than five business days before the hearing, or if the Plaintiff informed the ALJ of the evidence after the deadline but one of the circumstances listed in 20 C.F.R. § 404.935(b) applies. SSR 17-4p. If the ALJ finds Plaintiff met the requirements of 20 C.F.R. § 404.935 and the Plaintiff needs assistance obtaining the records, the ALJ will make an initial request for the evidence and will send one follow-up 10 to 20 calendar days after the initial request, if the evidence has not been received. *Id.* "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *See Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen*, 80 F.3d at 1288).

## 1. Physical therapy records

Plaintiff contends the ALJ erred by declining to hold the record open for receipt of Plaintiff's physical therapy records. ECF No. 14 at 4-6.

Plaintiff first informed the Social Security Administration of her physical therapy at Arizona Rehab when Plaintiff requested reconsideration of the initial denial of benefits. Tr. 315-16. She reported receiving treatment for her back from October 28, 2015 through December 2, 2015. *Id.* The adjudicator requested the records, but they were not received. Tr. 155.

Plaintiff appointed a representative on June 21, 2016. Tr. 162. On June 5, 2017, Plaintiff's representative received a list of exhibits from Plaintiff's case file. Tr. 345-55. At that time, the representative was on notice of which records were in the file and had the ability to determine which records were outstanding. The record contained a clear indication that the adjudicator had requested, but not received, records from Rehab Arizona. Tr. 155.

On August 16, 2017, the representative requested assistance obtaining some of Plaintiff's records. Tr. 356-57. The Administration requested those records. Tr. 361. Although Plaintiff contends Arizona Rehab was on the list, ECF No. 16 at 2, Arizona Rehab was not listed on the request; as such, the records were not requested by the Administration. On October 17, 2017, the representative sent

notice to the ALJ that there were outstanding records from Rehab Arizona for treatment from April 2014 through the present time. Tr. 369-70.

At the October 24, 2017 hearing, Plaintiff's representative, Ms. Guerra, stated records from Rehab Arizona were still outstanding. Tr. 50. Ms. Guerra stated that on October 9, 2017, she saw a mention of the physical therapy in the records, but noted the records were never obtained. Tr. 51. Ms. Guerra contacted Plaintiff to confirm the location of the physical therapy and requested the Rehab Arizona records on October 9, 2017. *Id.* Ms. Guerra explained Plaintiff had not mentioned this therapy location to her office before and the office noticed the reference to the records for the first time in October 2017. Tr. 52-53. However, the ALJ noted Ms. Guerra's office was appointed on June 21, 2016, and the records reportedly existed in 2014. Tr. 52. The ALJ found there was not good cause for the delay in obtaining the records and declined to hold the record open for the Rehab Arizona records. Tr. 53.

Plaintiff argues she and her representative gave a good faith effort to obtain the records and complied with the regulations by informing the ALJ of the outstanding records five business days before the hearing. ECF No. 14 at 4-5. Plaintiff argues Ms. Guerra's office did not have access to the file until June 2017 and requested the records as soon as her office determined in October 2017 that there were outstanding records. *Id.*

Ms. Guerra stated she reviewed the file when she was assigned to the case. Tr. 51. While Ms. Guerra may have been first assigned the case in October 2017, she did not offer an explanation as to why a review of the file did not find this information between June 2017, when the office first received access to the file, and October 2017. Ms. Guerra stated she saw the reference to physical therapy in the records and confirmed the location with Plaintiff, Tr. 51, but the record clearly indicates there were outstanding records from Arizona Rehab, Tr. 155. Ms. Guerra did not offer an explanation as to why Plaintiff did not obtain the records herself nor report the outstanding records earlier to her representative, as Plaintiff was notified the Administration did not receive the records. *Id.* Ms. Guerra's office requested assistance obtaining multiple records in August 2017 but did not provide an explanation as to why the Arizona Rehab records were not on that request. Tr. 356-57.

Given the unexplained five-month delay in ordering the Arizona Rehab records and notifying the ALJ of the outstanding records, the ALJ's determination that there was not good cause for the untimely submission of the records is supported by substantial evidence. Further, any error in the ALJ's determination would be harmless. *See Molina,* 674 F.3d at 1115.

The Rehab Arizona records were never submitted to the ALJ nor the Appeals Council. Given the Social Security Administration's prior attempts to

obtain the records were unsuccessful, and the Plaintiff never submitting the

records, it is not clear that these records exist. There are conflicting reports

regarding how long Plaintiff was seen at Rehab Arizona. Tr. 315, 370. Records in

2015 reference Plaintiff being referred for only six weeks of physical therapy. Tr.

599. This is consistent with Plaintiff's report that she was treated from October 28,

2015 through December 2, 2015. Tr. 315. Plaintiff makes no arguments as to

what evidence would be contained in the five weeks of physical therapy records

that is not contained elsewhere in the records from the same time period, nor how

those records would impact the ALJ's decision. As such, any error would be

harmless.

### 2. *Dr. Jackson's questionnaire*

Plaintiff contends the ALJ erred by failing to hold the record open for a

questionnaire completed by Dr. Jackson. ECF No. 14 at 4-6.

Ms. Guerra notified the ALJ on October 17, 2017 that Plaintiff's provider,

Dr. Jackson, was previously provided with a questionnaire that she expected Dr.

Jackson to complete. Tr. 372. At the hearing, Ms. Guerra stated her office was

still hoping to receive the questionnaire but had not yet received it. Tr. 50. Ms.

Guerra stated her office sent the questionnaire to Dr. Jackson and re-sent it once

but was unaware of any further follow-ups or communication with Dr. Jackson.

Tr. 53. Ms. Guerra reported Plaintiff "might" see Dr. Jackson on November 24,

2017.  Tr. 85.  No questionnaire form Dr. Jackson was submitted after the hearing nor at the Appeals Council level.

Plaintiff argues the ALJ erred by not holding the record open for a questionnaire from Dr. Jackson.  ECF No. 14 at 5-6.  Plaintiff argues she complied with the regulations because the questionnaire was requested more than a month before the hearing, it was followed up on, and the ALJ was informed the questionnaire was requested five business days before the hearing.  *Id.*  However, Plaintiff's counsel had represented Plaintiff since July 2016, Tr. 162, and had access to the electronic file beginning June 2017, when it would have been clear the file did not contain any treating opinions, Tr. 345-55.  Plaintiff's counsel did not request the questionnaire until approximately one month before the hearing.  ECF No. 14 at 5.  The questionnaire was re-sent to Dr. Jackson, but there is not evidence of further follow-up and there was no communication with Dr. Jackson.  Tr. 53.  Plaintiff does not contend there were any further follow-ups or communication with Dr. Jackson.

Plaintiff has not offered an explanation as to why the questionnaire could not be obtained from Dr. Jackson at an earlier date before the hearing.  Plaintiff also did not offer an explanation as to why she was only intending to see Dr. Jackson one month after the hearing, and not at an earlier date to complete the

questionnaire.  The ALJ's finding that there was not good cause for the delay in

obtaining Dr. Jackson's questionnaire is supported by substantial evidence.

Further, any error would be harmless.  *See Molina,* 674 F.3d at 1115.

Plaintiff did not submit a questionnaire from Dr. Jackson after the hearing nor at

the Appeals Council level.  There is no evidence that the questionnaire exists, and

if it does exist, Plaintiff makes no arguments regarding the content of the

questionnaire impacting the ALJ's decision beyond arguing the decision lacked

support because of the lack of a more recent opinion, which is addressed below.

Thus, any error would be harmless.

3. *Consultative exam/medical expert*

Plaintiff argues the ALJ failed to properly develop the record by declining to

order a consultative examination (CE) or call on a medical expert to testify.  ECF

No. 14 at 6.  "Ambiguous evidence, or the ALJ's own finding that the record is

inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty

to 'conduct an appropriate inquiry.'"  *See Tonapetyan*, 242 F.3d at 1150 (quoting

*Smolen*, 80 F.3d at 1288).

Here, the ALJ considered Plaintiff's request for a consultative exam, Tr. 87,

but determined there was adequate evidence to make a determination, Tr. 19.

Plaintiff contends there was inadequate evidence to allow for a proper

determination, as the ALJ relied on opinions from reviewing doctors from 2015

and 2016.  ECF No. 14 at 6.  Plaintiff argues the inadequate record triggered the ALJ's duty to obtain further evidence.  *Id.*  Defendant argues the evidence was neither ambiguous nor inadequate, and the ALJ's determination was supported by three reviewing doctor's opinions and medical records generally showing mild findings.  ECF No. 15 at 17.

Plaintiff does not point to any ambiguities in the record but argues only that the record was inadequate for a determination.  The ALJ relied on three reviewing doctor opinions.  Tr. 28-29 (citing Tr. 102-13, 115-28, 130-45).  The ALJ also relied on records from Plaintiff's primary care provider, rheumatologist, pain management, and other providers.  Tr. 26.  These records included physical examinations, lab results and imaging.  Tr. 26-27.  The ALJ noted that Plaintiff had a large gap in treatment, followed with reported improvement with treatment.  Tr. 25-27.  There is adequate evidence in the record on which the ALJ relied in making her determination.  As such, her duty to further develop the case was not triggered and the ALJ did not error in declining to order a CE or consult a medical examiner.  *See Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen*, 80 F.3d at 1288).

**B. Step Two**

Plaintiff contends the ALJ erred at step two by failing to identify her hyperlipidemia, hypertension, sleep apnea, diabetes, peripheral neuropathy, sinusitis, osteopenia, diverticulosis, osteoarthritis of the  hips, allergic rhinitis,

vitamin D deficiency, depression, systemic lupus erythematosus, Raynaud's syndrome, chronic pain syndrome and fibromyalgia as severe impairments. ECF No. 14 at 8-10. At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 404.1521.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…." SSR 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to

supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1522(a); SSR 85-28.[5]

Step two is "a de minimus screening device [used] to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

The ALJ found Plaintiff's systemic lupus erythematosus, Raynaud's, chronic pain syndrome and fibromyalgia were not established medically determinable impairments.  Tr. 22-23.  The ALJ found Plaintiff's  hyperlipidemia, hypertension, sleep apnea, diabetes, peripheral neuropathy, sinusitis, osteopenia, diverticulosis, osteoarthritis of the hips, allergic rhinitis, vitamin D deficiency and depression were non-severe as they were either untreated or became well-controlled with treatment and caused no more than mild limitations.  Tr. 21-23.

---

[5] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 19

Plaintiff contends the ALJ's step-two finding is not supported by the evidence because the ALJ's determination differed from the reviewing provider's opinions. ECF No. 14 at 8-10. Dr. Wright found Plaintiff's fibromyalgia, peripheral neuropathy and COPD were severe, Plaintiff's obesity was non-severe, and that degenerative disc disease and rheumatoid arthritis were not medically determinable impairments. Tr. 108-09. Dr. Hurley gave the same opinion, Tr. 122, and Dr. Orfei affirmed the opinion, Tr. 138. The ALJ's severity determinations conflict with the reviewing doctors' opinions on all five of the conditions the ALJ found to be severe, and three of the conditions the ALJ found to not be severe impairments. Plaintiff argues the ALJ improperly substituted her own opinion for that of the reviewing doctors, without relying on other evidence or authority in the record. ECF No. 14 at 9-10.

Plaintiff lists all of the conditions the ALJ addressed in the severity determination but only sets forth an argument as to why the fibromyalgia determination was unsupported. *Id.* at 8. While the ALJ's severity determination differed from the reviewing doctors, the ALJ relied on other medical evidence in making this determination. Plaintiff contends the ALJ improperly rejected Dr. Kim's opinion that Plaintiff has fibromyalgia, as the ALJ did not give specific and legitimate reasons for finding fibromyalgia to not be a severe medically

determinable impairment. *Id.* at 10 (citing *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)).

The ALJ considered SSR 12-2p, which sets forth the two criteria by which a claimant may be found to have a medically determinable impairment of fibromyalgia. Tr. 23. SSR 12-2p indicates that the 1990 ACR criteria requires that the claimant have 11 or more tender points, and those points must be found bilaterally and above and below the waist. The ALJ found that while Dr. Byrd's examination showed more than 11 tender points, the locations of the points were not documented. *Id.* (citing Tr. 756). Additionally, based on the exam, the diagnoses were history of rheumatoid arthritis, arthralgia, and sicca, suggesting potential other causes for her symptoms; while fibromyalgia was a noted as a potential diagnosis, it was not diagnosed based on the examination. Tr. 23 (citing Tr. 756). Dr. Byrd also noted additional testing was needed, suggesting that other causes had not yet been ruled out, as required by SSR 12-2p. Tr. 756.

Dr. Kim later added fibromyalgia to Plaintiff's list of diagnoses and started Plaintiff on a medication for fibromyalgia. Tr. 640. However, Dr. Kim's diagnosis was made after noting that Dr. Byrd "suspects fibromyalgia", and Dr. Kim did not perform a tender point exam. Tr. 639. Without documentation of the locations of the tender points, Plaintiff cannot meet the 1990 ACR criteria for fibromyalgia. SSR 12-2p. The 2010 ACR criteria requires repeated manifestation

of six or more fibromyalgia symptoms, signs or co-occurring conditions.  *Id.*

Plaintiff does not set forth an argument that she meets the 2010 criteria but cites

only to the tender point examination as evidence of fibromyalgia.  ECF No. 14 at

10.  The ALJ gave specific and legitimate reasons for rejecting the finding that

fibromyalgia is a severe medically determinable impairment, and her step-two

analysis is supported by substantial evidence.

Additionally, even if the ALJ should have determined that fibromyalgia, or

any other condition, is a severe impairment, any error would be harmless because

the step was resolved in Plaintiff's favor.  *See Stout v. Comm'r of Soc. Sec. Admin.*,

454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th

Cir. 2005).  Plaintiff makes no showing that any of the conditions mentioned create

limitations not already accounted for in the RFC.  *See Shinseki*, 556 U.S. at 409-10

(the party challenging the ALJ's decision bears the burden of showing harm).

Plaintiff's argument rests primarily on the fact that the ALJ's severity

determination differs from the reviewing doctors' severity determinations,

however, the ALJ's RFC is identical to the RFC set forth by the reviewing doctors.

Tr. 25, 109, 124, 138.  Plaintiff contends the step-two analysis was a harmful error

because the ALJ did not develop the record, relied on her own medical judgments,

and found Plaintiff's symptom allegations inconsistent with the record.  As

addressed above, the ALJ did not have a duty to further develop the record in this

case and she relied on evidence in the record in making her determination.

Plaintiff does not set forth an argument as to which symptom claims were

improperly rejected due to the severity determination. Thus, the ALJ's step two

finding is legally sufficient.

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting her symptom claims. ECF No. 14 at 11-20. An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929 (c).  The ALJ is instructed to "consider all of the evidence in

an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 26.

First, the ALJ found Plaintiff's statements inconsistent with her treatment history.  *Id.*  Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may serve as a basis to discount the claimant's reported symptoms, unless there is a good reason for the failure.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  The effectiveness of treatment is also a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, Plaintiff had a gap in treatment until the middle of 2015.  Tr. 26 (citing Tr. 400, 402).  The ALJ considered Plaintiff's testimony that she lacked insurance

during the gap in treatment but the ALJ noted Plaintiff also did not receive emergency or low or no-cost treatment during the time. Tr. 26. Plaintiff contends the lack of insurance explains the gap in treatment but does not offer an explanation as to why she did not seek any low or no-cost treatment. ECF No. 14 at 15-17. The ALJ also found Plaintiff did not have any rheumatology treatment even when insured, causing a five to six-year gap in rheumatology treatment, though a portion of that time period falls during the time when Plaintiff reported improvement. *Id.* (citing Tr. 384).

The ALJ further reasoned Plaintiff did not follow up on all of her prescribed treatment; she was previously prescribed anti-rheumatic medications, which she did not take for a period of time, Tr. 26 (citing Tr. 651), and she received only one injection during the relevant time for her pain, though she reported they had helped, Tr. 465, 639, 647. Plaintiff contends the ALJ did not consider Plaintiff's adverse effect from the injection causing her desire to not have further injections, ECF No. 16 at 7, but Plaintiff does not explain why she did not have any further injections after she learned the injection procedure had changed, and Plaintiff had said she may be interested in the new procedure, Tr. 830.

Additionally, when she received treatment, Plaintiff generally had a good response to treatments. Tr. 26 (citing Tr. 378, 385, 390, 392, 400, 416, 418, 465, 630, 636, 820). Plaintiff did not challenge the ALJ's finding that Plaintiff had

improvement with treatment in the opening brief but stated in her reply the ALJ's citations to objective evidence showing improvement do not support rejecting Plaintiff's allegations.  ECF No.16 at 8.  The cited evidence shows Plaintiff consistently had improvement in her symptoms with treatment.  *See, e.g.,* Tr. 378-79 (stable COPD, stable hypertension, controlled diabetic polyneuropathy, stable diabetes, stable back pain); Tr. 385 (no evidence of inflammatory arthritis); Tr. 390 (improved pain symptoms, controlled hyperlipidemia, stable COPD, hypertension and back pain); Tr. 416, 418 (stable sedimentation rate); Tr. 630-31 (doing well with CPAP, stable fibromyalgia symptoms).  This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

Second, the ALJ found the objective evidence was inconsistent with Plaintiff's allegations of disabling limitations.  Tr. 26.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

ORDER - 27

The ALJ reasoned the imaging and physical examinations were inconsistent with Plaintiff's allegations. Tr. 26. Imaging of Plaintiff's hands, feet and lumbar spine were generally normal, with no more than mild findings. Tr. 26-27 (citing Tr. 448, 451, 605-07, 611, 630, 655-56, 658, 780, 813, 815). On exam, Plaintiff had only mild effusion and no synovitis. Tr. 26 (citing Tr. 456, 471, 631, 642-43, 756, 785). Her foot examination was normal in 2017. Tr. 26 (citing Tr. 722). While Plaintiff had some tenderness and pain on exam, and some positive straight leg tests, Tr. 587, she had no lower extremity weakness, Tr. 827, and her back pain improved with treatment, Tr. 636, leading to normal stability, strength, range of motion and straight leg tests, Tr. 785. While Plaintiff alleged significant numbness and limitations due to neuropathy, as well as shooting pains into her lower extremities, her examination showed only mild sensory loss and no evidence of radiculopathy or myopathy. Tr. 543. Despite some abnormal upper extremity examination findings, Tr. 456 (strength four to five out of five); Tr. 466, 593, 598 (shoulder pain and weakness), the reviewing doctors found Plaintiff does not have any manipulative limitations. Tr. 110, 124, 141. This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

Third, the ALJ found Plaintiff's work history was inconsistent with her allegations. Tr. 28. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition when weighing the

claimant's symptom reports. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Additionally, "receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988)). But where the record "does not establish whether [the claimant] held himself out as available for full-time or part-time work," such a "basis for the ALJ's credibility finding is not supported by substantial evidence," as "[o]nly the former is inconsistent with his disability allegations." *Id.*

Here, Plaintiff's alleged onset date corresponds to the closure of her employer's business, rather than the job ending due to her conditions. Tr. 28, 55. Plaintiff contends the business closed due to her no longer being able to work there, ECF No. 14 at 12, however, Plaintiff testified the employer no longer wanted to run the business, and he would need to hire additional people to help run it if Plaintiff could not perform all the tasks she previously had. Tr. 56. Plaintiff testified she had begun having difficulties with her job prior to her alleged onset date, but she received no treatment during that time. Tr. 28, 58-59. The ALJ's finding that Plaintiff's work ended at her alleged onset date for a reason unrelated to her impairments is a reasonable interpretation of the evidence.

Plaintiff testified that she "didn't work for a long time" due to her symptoms, during the period when she was previously awarded benefits, and as

she improved, she returned to work part-time and increased her hours with time. Tr. 58. The ALJ found this testimony inconsistent with Plaintiff's work history and earnings, which show she worked at the substantial gainful activity level from 2006 through 2010 and again in 2013. Tr. 28 (citing Tr. 275). The Plaintiff's earnings only dropped below the substantial gainful activity threshold from 2004 through 2005, while her application for benefits was pending, until it later dropped again. Tr. 275.

Plaintiff also received unemployment benefits in 2014 and testified that she had received job offers after her last employment ended. Tr. 28, 71. The record does not indicate if Plaintiff held herself out as able to work full-time or part-time, therefore the ALJ erred in discounting Plaintiff's claims due to her receipt of the benefits. *See Carmickle*, 533 F.3d at 1161-62. However, this error was harmless, as the ALJ relied on other clear and convincing reasons to reject Plaintiff's symptom claims.

On this record, the ALJ reasonably concluded that Plaintiff's allegations were inconsistent with her treatment history, objective evidence and work history. These findings were supported by substantial evidence and were clear and convincing reasons to discount Plaintiff's symptom complaints.

**D. Lay Witness Evidence**

Plaintiff contends the ALJ erred in rejecting lay witness statements. ECF No. 14 at 20-21. An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled. *Stout*, 454 F.3d at 1053. Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. § 404.1513; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

*1. Ms. Schraufnagel*

Winnie Schraufnagel, Plaintiff's sister, provided a statement regarding Plaintiff's functioning. Tr. 367. Ms. Schraufnagel stated Plaintiff has difficulty driving and seeing, she experiences shortness of breath from walking and has difficulty walking. *Id.* She reported Plaintiff needs breaks to sit down and needs assistance with household chores, including lifting items above elbow-height. *Id.* The ALJ gave Ms. Schraufnagel's statement limited weight. Tr. 29.

The ALJ found Ms. Schraufnagel's statement described Plaintiff's condition as declining compared to her prior functioning. Tr. 29 (citing Tr. 367). The ALJ reasoned a decline in functioning is not sufficient for a finding of disability. Tr. 29. Moreover, the ALJ also found Ms. Schraufnagel's statements were inconsistent with the objective evidence. *Id.* Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Baylis v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons include inconsistency with medical evidence, activities, and reports). Here, the ALJ found Plaintiff's lack of a diagnosed visual impairment was inconsistent with Ms. Schraufnagel's statement, as was the evidence of Plaintiff having normal lower extremity strength. Tr. 29. Plaintiff argues the ALJ erred by not discussing Ms. Schraufnagel's statement that Plaintiff cannot lift items above her elbow, as Plaintiff also testified that she cannot lift overhead, and the ALJ did not address the limitation. ECF No. 14 at 21.

While the ALJ only specifically pointed to evidence related to Plaintiff's vision and lower extremities in this portion of the opinion, the overall record is inconsistent with Ms. Schraufnagel's statements, given generally normal examinations and no more than mild findings. *See, e.g.,* Tr. 669, 722, 809. Elsewhere in the decision, the ALJ discussed Plaintiff's hand imaging showing only mild osteopenia and degenerative changes, and normal strength. Tr. 26-27,

780. Plaintiff had no evidence of rheumatoid arthritis of inflammatory arthritis in 2015. Tr. 27 (citing Tr. 456). Plaintiff also had no joint synovitis and only mild effusion. Tr. 27 (citing Tr. 456, 471, 631, 642-43, 756, 785). The ALJ found that based on the evidence, it was unnecessary to provide manipulative limitations. Tr. 27. Plaintiff's back imaging showed only mild findings, which the ALJ found supported no more of a restrictive RFC than a limitation to light work. *Id.* (citing Tr. 655-56, 813, 815). Additionally, the ALJ gave significant weight to the opinions of the State agency consultants, Tr. 28-29, both of whom found Plaintiff had no limitations in reaching, Tr. 110, 124. The ALJ gave germane reasons to reject Ms. Schraufnagel's statement.

### 2. *Ms. Rojas*

Christy Rojas, Plaintiff's niece, provided a statement regarding Plaintiff's functioning on June 12, 2018. Tr. 374. Plaintiff submitted the letter four days before the hearing. Tr. 223. As discussed above, 20 C.F.R. § 404.935(a) requires that claimants submit or inform the ALJ about evidence no later than five business days before the hearing. The ALJ will accept untimely evidence if one of the reasons listed in 20 C.F.R. § 404.935(b) applies.

The ALJ declined to admit Ms. Rojas' statement. Tr. 18. The ALJ reasoned that while Plaintiff's representative submitted a letter informing the ALJ of outstanding letters more than five business days before the hearing, the letter did

not say who would be authoring the letters, and the representative did not provide an explanation as to why the letters were not obtained sooner. Tr. 18-19. At the Appeals Council level, Plaintiff argued she could not control when a third party provided a letter. Tr. 224. However, Plaintiff did not offer an explanation as to how she actively and diligently sought the evidence; there is no information as to when she requested the letter, nor any follow-up attempts to obtain the letter.

Plaintiff now argues Ms. Rojas' statement was newly submitted evidence to the Appeals Council, which the Appeals Council erred by not crediting. ECF No. 14 at 21. The Appeals Council will review a case if it receives additional evidence that is new and material and that relates to the period on or before the date of the ALJ decision, and it finds there is a reasonable probability that the additional evidence would change the outcome of the case. 20 C.F.R. § 404.970(a)(5). However, the Appeals Council will only consider additional evidence when deciding whether to review a case if the claimant shows good cause for not meeting the five-day rule because of one of the reasons listed in 20 C.F.R. § 404.935(b). If the claimant submits new evidence and the Appeals Council does not find that the claimant had good cause for the untimely submission of the evidence, the Appeals Council will send the claimant a notice that explains why it did not accept the additional evidence. 20 C.F.R. § 404.970(c). When the Appeals Council considers new evidence in declining review, that evidence becomes part of

the administrative record, which this court must consider in determining whether the ALJ's decision is supported by substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

Plaintiff submitted Ms. Rojas' statement to the Appeals Council. Tr. 374. The Appeals Council included Ms. Rojas' statement as an exhibit, and made it a part of the record, indicating it was considered. Tr. 5-6. The Appeals Council found the evidence, and Plaintiff's arguments, did not provide a basis for changing the ALJ's decision. Tr. 1. By considering the evidence, the Appeals Council appears to have found Plaintiff had good cause for the late submission of the evidence. As the evidence is a part of the record, this Court must now determine whether substantial evidence supports the ALJ's decision, when adding Ms. Rojas' statement to the record. *Brewes*, 682 F.3d at 1159-60.

Ms. Rojas' stated Plaintiff cannot lift heavy objects or reach above her head, she has trouble breathing and naps from exhaustion. Tr. 374. She reported Plaintiff has difficulty with chores, has ongoing pain and fatigue, and has had decreased socialization. *Id.* She reported Plaintiff now needs assistance with multiple tasks. *Id.* Ms. Rojas' statement does not contain any evidence that is not already contained elsewhere in the record. Plaintiff and Ms. Schraufnagel provided the same information as Ms. Rojas. Tr. 73, 306-09, 325-33, 367. As

such, the addition of Ms. Rojas' statement does not impact the ALJ's decision; the decision remains supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED April 7, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE